Rockingham, }
Dec. 1, 1903. }

DRAKE, *Adm'r*, *v.* TRUE *& a.*

Where a moiety of corporate stock specifically bequeathed is subsequently sold by the testator, the persons named as equal legatees thereof are entitled to share equally in the stock which is found to be a part of the estate at the testator's decease.

Where a testator's homestead is not needed for the satisfaction of claims against his estate, the executor has no such interest in the determination of the question whether the whole or a part of the premises passes by a devise in trust as to require the advice of the court thereon.

BILL IN EQUITY, for the construction of the will of Sarah M. Sanborn, of whose estate the plaintiff is the administrator with the will annexed. Facts found, and case transferred from the April term, 1903, of the superior court, by *Stone*, J.

The will is dated November 9, 1892, and there are two codicils, dated respectively November 20, 1893, and June 17, 1896. The testatrix died October 27, 1902. At the date of the will and prior to March, 1899, she owned twenty shares of the capital stock of the National Mechanics and Traders Bank of Portsmouth. In March, 1899, the bank reduced its capital stock one half, each stockholder surrendering one half of his or her shares and receiving $100 for each share so surrendered. The testatrix surrendered ten of her shares and received $1,000 for them. She owned the remaining ten shares at the time of her death. By the third and fourth items of her will she gave to two of her nephews each "ten shares in" said bank. They or their representatives, and Mary A. True, the residuary legatee, are defendants.

The testatrix was the widow of Jeremiah Sanborn, who died before the date of her will. In his lifetime he owned and they occupied, and down to her death she continued to occupy, as their homestead, a dwelling-house known as No. 3 Cass street, about twenty-five feet wide, standing upon the northerly side of a lot of land on the westerly side of Cass street in Portsmouth, and fronting on said street, which lot was within a few inches of 100 feet wide and ran back about 102 feet. That part of the lot not covered by the house was used for a garden, lawn, and orchard. The testatrix became the owner of this property after the death of her husband. The fence upon Cass street, in front of about fifty feet of the northerly part of the lot where the house stood, was different from and more expensive and elaborate than the fence in front of the remainder of the lot, and the testatrix, prior to her death, had procured plans for the erection of another dwelling-house upon the southerly part of the lot.

By the eighteenth clause of the will, as modified by the third clause of the first codicil, the testatrix devised to the trustees of the Chase Home for Children the above-mentioned dwelling-house, as follows: "The dwelling-house and lot of land upon which it stands, known as the homestead of the late Jeremiah Sanborn, being No. 3 Cass street, in aforesaid city of Portsmouth, being fifty feet of land on said Cass street and running back one hundred and two feet, more or less, . . . to hold in trust, the income from the same to be used for the support of said Children's Home."

The estate is sufficient to satisfy all claims against it and all legacies. The administrator asks instructions upon the following points: How shall the legacies given in the third and fourth items of said will be satisfied, and what shall be done with the ten shares of stock of the National Mechanics and Traders Bank in the hands of the administrator? Does the Chase Home for Children take the whole of said lot of land about 100 feet wide on Cass street, or only a lot fifty feet wide where the dwelling-house stands upon the northerly side of the lot?

*Page & Bartlett*, for the plaintiff.

WALKER, J. 1. As the testatrix was the owner of twenty shares of the stock of the National Mechanics and Traders Bank when she made her will, it is more probable than otherwise that she intended, in her bequests to her two nephews of ten shares each of the stock of that bank, to dispose specifically of the stock she then owned. A finding that she gave them twenty shares of that stock generally, whether she happened to be the owner of any at her decease or not, could only be supported by evidence which is not disclosed by the case. As she had but ten shares at her decease, the two nephews, whom she made equal legatees of the twenty shares she possessed at the date of the will, are entitled to five shares each. *Gardner* v. *Gardner, ante,* p. 257; *White* v. *Winchester,* 6 Pick. 48; *Trustees* v. *Tufts,* 151 Mass. 76.

2. The case does not show that the administrator is legally interested in the second question submitted. For aught that appears, he may be able to settle the estate without resorting to the real estate which was occupied by the testatrix as a homestead. Under such circumstances a construction of the will defining the ownership of the land serves no useful purpose, and the advice of the court thereon is not given. *Bailey* v. *McIntire,* 71 N. H. 329.

*Case discharged.*

All concurred.