In the Matter of the Accounting of Morgan E. Bishop et al., as
Executors of Gertrude C. Hart, Deceased.

Surrogate's Court, Kings County, January 12, 1954.

*Abraham Apat* for executors, petitioners.

*M. A. Willment* for Annie I. Gibson, respondent.

RUBENSTEIN, S.   An objection by one of the legatees to the executors' account requires a determination as to whether a bequest to her is a general or a specific legacy.

About twenty years before the execution of the will testatrix, over a period of months, entered into three trust agreements with the Brooklyn Trust Company.  In each of these agreements she directed the company, as trustee, to invest in a common trust fund known as the " Composite Fund, Series A."   As a result of these directions, the company purchased and held in trust for testatrix forty-five " units " of the fund.  The company's declaration of trust relating to the fund provided that it should " consist of such moneys as Brooklyn Trust Company, acting in a fiduciary capacity and with express authority to do so, shall deposit with itself for investment."

The general public was not permitted to invest or participate in the fund.  It was restricted to investments by the company

acting under an express trust. " Certificates of ownership " were to be issued by the company as trustee of the fund only to itself as trustee of a participating interest, such certificates of ownership being merely a means of maintaining the company's internal records. Subsequent to the execution of the will, testatrix, in accordance with the power reserved in the trust agreements, revoked them and the entire principal balances and accrued income thereon were paid to her.

Paragraph " THIRD " of testatrix' will reads as follows: " I give and bequeath to ANNIE I. GIBSON twenty-five (25) shares of Preferred Stock of United States Steel Corp.; forty-five (45) shares of stock of the Brooklyn Trust Company Composite Stock; one (1) large amethyst pin surrounded with pearls; three stone diamond ring surrounded by small diamonds; two gold bracelets set with amethyst; Gruen gold watch; the mortgage covering property at Rifton * * *, together with all my household articles, rugs, dishes, clothes, silverware, furniture and jewelry not otherwise disposed of in this, my last Will and Testament." In the residuary clause, Annie I. Gibson, the objectant, was also bequeathed six-fifteenths of the residue.

The objectant insists that the " Composite Stock " bequeathed is in the category of public funds available to the general public and the executors should be directed to deliver what testatrix had or its money equivalent. It is contended " The way to find out whether this particular investment is available to the general public, including the executors, is to direct the executors to deliver the legacy. They then can go with the legatee (as members of the general public) to the Trust Company with a check to its order in the proper amount and establish a trust, the principal to consist of 45 units of the Composite Fund, income payable to the legatee, with the right to her to revoke the trust and receive the principal. This would be exactly the same type of investment the deceased had in her lifetime, and the exact type of investment she intended to bequeath."

Perhaps if testatrix had realized the nature of her investment with the Brooklyn Trust Company she would have described it with greater precision than she did. If she had bequeathed her three trust funds, which is what she had, the present difficulty might not have arisen. She turned over money in trust to the company. This money was to be replaced as principal by participation certificates in still another trust. She was to receive income in money. On the termination of her trusts she could receive nothing but money. She never had anything but

an equitable interest which in turn was an equitable interest in a trust fund. She never had any corporate shares and did not even have the right to possession of the participation certificates. Even assuming, *arguendo,* she intended to give " shares ", such " Composite Stock " would not be within the type of securities which executors are required to purchase and deliver in kind. Units of the Composite Fund are not the securities of an enterprise commonly purchased and sold by the general public which " frequently differ in no essential particular from currency " (*Matter of Freeman,* 139 Misc. 301, 305), they are not "shares * * * of a sort dealt with substantially as commodities on stock exchanges " (*Matter of Eastman,* 171 Misc. 902, 903), " stock or shares in public funds, that is stocks or bonds dealt in by the general public on public exchanges " (*Matter of Kingsley,* 67 N. Y. S. 2d 464, 470).

While the public exchanges spoken of are not limited to recognized regularly organized exchanges, the notion of what is commonly bought and sold on one, of something analogous to a commodity traded freely in an open market, runs through the cases. In contrast to this idea, units of the Composite Fund are available only at the offices of the successor to the Brooklyn Trust Company when a settlor enters into a trust agreement with it — and then only at the option of the company and subject to whatever terms and conditions the company may see fit to impose. The mere fact that the company in this instance may be willing to enter into an agreement identical with those with the testatrix does not transform the subject matter of the bequest so as to bring it within the class of securities considered public funds or the class of corporate securities thought of as close kin to public funds. The court concludes that, even if the bequest were stock, its limited availability would be enough to infer testatrix' intention to give the very stock she owned.

Quite apart from the peculiar attributes of the " Stock " above alluded to, what is within the " four corners of the will " brings about the same result. In it testatrix disposed of every item of corporate stock then owned by her. More than that, as objectant points out, testatrix referred therein to practically every item of personal property she possessed except bank deposits, and she bequeathed specifically her tangible personal property. Other than small bequests for Masses, no bequest of an apparent pecuniary nature was made. As to bequests of stock, testatrix did not employ the possessive " my " or any other distinguishing sign although in making bequests of some

personal property and jewelry, she did use designating marks or phrases. For example, in the paragraph following the one under consideration, testatrix bequeathed " my ruby ring surrounded by diamonds and my black opal and diamond lavalier and chain." However, in the paragraph bequeathing the " Composite Stock " the gifts of jewelry lack this possessive pronominal limitation: she bequeathed " one (1) large amethyst pin surrounded by pearls; three stone diamond ring surrounded by small diamonds; two gold bracelets set with amethyst; Gruen gold watch." The argument predicated on testatrix' failure to use the indicative " my " or other designating mark or phrase as evidencing testatrix' intention to confer upon her legatee the right to receive the gift not conditioned upon its existence at the time of death, would apply with as much force to the Gruen watch as it would to the " Composite Stock." If testatrix had sold the watch it could, with equal force, be argued that the executors should be compelled to deliver one.

Mere possession of the exact number of shares as those bequeathed is not of itself sufficient to overcome the rule that a legacy is presumed to be general (*Tifft* v. *Porter,* 8 N. Y. 516). It is, nevertheless, a fact of some significance when joined with others tending to show an intention to give the shares owned at the time of execution of the will (*Matter of Security Trust Co.,* 221 N. Y. 213; *De Nottebeck* v. *Astor,* 13 N. Y. 98; *Matter of Ferreck,* 241 Penn. St. 340). Not only did testatrix refer to practically every item of tangible personal property which she owned, but she disposed of exactly the number of shares she then owned. Separated only by semicolons are the gift of the " Composite Stock," the amethyst pin, the Gruen watch and other bequests clearly specific. This same intermingling also appears elsewhere in the will. In the " SEVENTH " paragraph of the will, a legacy of stock is followed by a gift of " my jade and gold bracelet." As it was said in *Sherman* v. *Riley* (43 R. I. 202, 207), " Courts have recognized the rule that there is a presumption that the testator intended a gift to be specific when the gift is closely associated in the will with other gifts that are clearly specific to the same legatee." (See, also, *Pratt* v. *Pratt,* 1 Ch. Div. 491 [1894].) The joint effect of these tokens of intention leads the court to conclude that testatrix' thought was to dispose of the stock she owned at the time of the execution of the will and her thought was to dispose of the specific " Composite Stock ".

The court holds that the bequest of the forty-five " shares " of the " Brooklyn Trust Company Composite Stock " was specific and was adeemed by testatrix' revocation of the trusts. The objection is dismissed.

Proceed accordingly.